**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**CLIVENS CELESTIN**,

                          Plaintiff,

    - v -                                          Civ. No. 9:12-CV-0301
                                                               (GLS/RFT)

**JEFFREY PREMO**, *Correction Officer, Upstate Correctional Facility*, **STANLEY TULIP**, *Correction Officer, Upstate Correctional Facility*, **BRUCE TRAUX**, *Correction Officer, Upstate Correctional Facility*, **D. ROCK**, *Prison Superintendent, Upstate Correctional Facility* **BRIAN FISCHER**, *Commissioner of Dept. of Corrections*, **MRS. J. CARVER**, *Director of Inmate Classification and Movement, New York State Dept. of Corrections*,

                          Defendants.

**APPEARANCES:**                                  **OF COUNSEL:**

**CLIVENS CELESTIN**
Plaintiff, *Pro Se*
94-A-5376
Attica Correctional Facility
Box 149
Attica, NY 14011

**HON. ERIC T. SCNEIDERMAN**              **MICHAEL G. McCARTIN, ESQ.**
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     *Pro se* Plaintiff Clivens Celestin brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants used excessive force, tampered with his grievances, failed to provide adequate medical care, and failed to protect him from other officers in contravention of the Eighth

and Fourteenth Amendments. *See generally* Dkt. No. 1, Compl. Defendants move for Partial Summary Judgment seeking the dismissal of Defendants Rock, Fischer, and Carver. Dkt. No. 62. Plaintiff opposes the Motion. Dkt. No. 67. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED**.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more

than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Background

According to Plaintiff, on October 26, 1999, while incarcerated at Upstate Correctional Facility ("UCF"), Plaintiff stabbed Corrections Officer Defendant Premo in the arm with a pen. Dkt. No. 62-3, Ex. A, Clivens Celestin Dep., dated Mar. 11, 2013, at pp. 34–38; Dkt. No. 67-1, Pl.'s

Opp'n at ¶ G. Disciplinary charges were filed, and after a hearing was held, Plaintiff was found guilty and transferred to Clinton Correctional Facility. Celestin Dep. at pp. 36–38. Over the next several years, Plaintiff was transferred to various correctional facilities throughout New York State. *Id.* at pp. 38–40.

In April or May of 2009, Plaintiff was transferred back to UCF from Green Haven.[1] *Id.* at ¶ 40. Plaintiff alleges that on October 29, 2010, while awaiting transportation from UCF to an outside hospital for a minor surgical procedure, he was attacked and beaten by multiple guards, including Defendant Premo who was still employed as a corrections officer at UCF. Plaintiff claims that as a result of the assault he was sore and swollen and suffered bruises on his shoulder, lower back, knee, and thigh, as well as bruised and fractured ribs. *Id.* at pp. 7, 17, 24–26, & 30; *see also* Compl. at pp. 6–7.[2] Plaintiff further alleges that during the altercation, Defendant Premo called him a "nigger," told him it was "payback time," and asked him if he remembered Defendant Premo "from ten years ago." Celestin Dep. at pp. 33–34.

### B. Interference with Grievances

Plaintiff alleges that Defendant Rock, UCF's Superintendent:

CONCEAL[ED] SERIOUS FACILITY COMPLAINTS BY EXPLOITING [THE PRISON LITIGATION AND REFORM ACT] AND DISCARDING MY GRIEVANCES AND APPEALS BY FINDING THE RELEVANT FACTS WITHOUT MERIT. THE SUPERINTENDENT AND EXECUTIVE TEAM ENGAGES IN NON-INVESTIGATIVE TECH[NIQUES] THAT ULTIMATELY GETS GRIEVANCES DISMISSED. AT TIMES GRIEVANCES AGAINST OFFICERS FOR SERIOUS VIOLATIONS ARE NOT FILED PROPERLY & WITHOUT IMPLEMENTATION OF A RECEIPT SYSTEM IT FURTHER COMPLICATES INMATES ABILITY TO REMAIN DILIGENT ON THEIR

---

[1] The exact date Plaintiff was transferred back to UCF in 2009 is unclear.

[2] The pages of Plaintiff's Complaint are unnumbered; therefore, all references to Plaintiff's Complaint are to the page numbers automatically assigned by the Court's Electronic Case Filing system.

> ISSUES. WHICH ALSO CONTRADICTS THE FOURTEENTH AMENDMENT,
> AND A RIGHT TO SUBSTANTIVE DUE PROCESS FOR INMATES. NOT TO
> MENTION NEW YORK STATE LAWS WITHIN THE FACILITY LEVEL.

Compl. at pp. 8–9.

Defendants move to dismiss this claim on the grounds that it does not state a claim under § 1983. Dkt. No. 62-8, Defs.' Mem. of Law, at p. 9.

Even when construed liberally, complaints that prison officials tampered with, failed to investigate, or improperly processed grievances, without more, do not give rise to liability under § 1983. *See Irvis v. Seally*, 2011 WL 454792, at *2 (N.D.N.Y. Feb. 4, 2011) (Sharpe, J.) ("Thus, regardless of whether and to what extent defendants followed their grievance procedures in investigating or failing to investigate Irvis's complaints, his claims must fail as a matter of law as they are not actionable under § 1983."). Therefore, we recommend Defendants' Motion be **GRANTED** and Plaintiff's claim that Defendant Rock tampered with or failed to follow proper grievance procedures be dismissed.

### C. Supervisory Liability

Defendants have not moved for Summary Judgment on Plaintiff's excessive force claims; therefore, we do not discuss the merits of this claim. However, Defendants move for Summary Judgment as against Plaintiff's allegations that Defendant Fischer, the Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), and Defendant Rock, UCF's Superintendent, were liable in their supervisory capacities for the alleged excessive use of force perpetrated by Defendant Premo and other corrections officers at UCF. The entirety of Plaintiff's allegations in this regard are as follows:

> THE AFOREMENTIONED ASSAULT AND BATTERY AND FAILURE TO
> PROTECT WAS A PRODUCT PROXIMATE CAUSE OF CUSTOMARY WIDE
> SPREAD [SIC] []ABUSE THROUGHOUT THE NEW YORK STATE

-5-

> DEPARTMENT OF CORRECTIONS AND THE UPSTATE CORRECTIONAL FACILITY IN CONJUNCTION WITH GROSS NEGLIGENCE AND OR DELIBERATE INDIFFERENCE. NEW YORK STATE HAS GAPING HOLES REG[]ARDING TRAINING, MONITORING, SUPERVISING, SURV[EILLANCE], INVESTIGATING, AND DISCIPLINING/FIRING THEIR PERSON[N]EL FOR WRONGFUL ACTS [DEFENDANTS FISCHER AND ROCK] KNOWS OF [SIC], AND SHOULD KNOW OF OR CONDONES OR FAIL TO INTERVENE.

Compl. at pp. 10–11.

An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted); *see also Selah v. Fischer*, 2013 WL 5603866, at *2 (N.D.N.Y. Oct. 11, 2013) (Sharpe, C.J.) (citing *Colon v. Coughlin).*

Even if we assume for the sake of argument that excessive force was used on October 29, 2010, Plaintiff's claim that Defendants Rock and Fischer were liable in their supervisory capacity must fail. Beyond conclusory allegations, Plaintiff fails to allege, much less provide any documentary or record evidence to support, a single fact from which it could be inferred that either Defendant was personally involved in the alleged assault at UCF. Indeed, Plaintiff conceded as much in his Deposition. When asked why he sued Defendant Rock, Plaintiff responded that "I added him to the suit because [] he is the head of it, I mean, he runs the stuff, so I figured I would put him in there." Celestin. Dep. at pp. 45–46. When asked if that was the only reason that he

named Defendant Rock Plaintiff responded, "[y]es; I felt he was responsible, too, even though he wasn't at the incident." *Id.* at p 46. When asked if "the only reason that you sued [Defendant Fischer] is because he is the boss of the entire department," Plaintiff responded in the affirmative. *Id.* And, he further admitted that Defendant Fischer was neither at the facility at the time of the assault nor physically involved in any way. *Id.* Although Plaintiff alluded, in his Complaint and Deposition, that Defendant Fischer was liable in his capacity as DOCCS' chief policy maker, he fails to identify, with any specificity, which, if any, of the policies he purportedly created or countenanced was responsible for the alleged use of excessive force which spurred the instant action. *Id.*

It is clear that mere linkage in the chain of command is insufficient to establish liability under § 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Likewise, given Plaintiff's failure to identify any particular policy as having caused the alleged assault, Plaintiff cannot raise a triable issue of material fact as to whether either Defendant had "actual or constructive notice of the unconstitutional practices . . . , [or that they] demonstrate[d] gross negligence or deliberate indifference by failing to act" in response to that knowledge. *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (internal quotation omitted). Thus, Plaintiff has failed to raise a triable issue of fact with regard to whether Defendants Fisher and Rock were personally involved in the alleged excessive use of force on October 26, 2010.

Therefore, we recommend that Defendants' Motion be **GRANTED** with regard to Plaintiff's claim that Defendants Fischer and Rock were personally involved, *via* a theory of supervisory liability, in the alleged excessive use of force perpetrated by Defendant Premo and others.

### D. Failure to Protect

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("[P]rison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him[.]" *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991). A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added); *see also Rigano v. Cnty. of Sullivan*, 486 F. Supp. 2d 244, 255 (S.D.N.Y. 2007) (citing *Farmer v. Brennan*, 511 U.S. at 842-43 n. 8; *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); & *Candelaria v. Coughlin*, 1997 WL 171256, at *10-11 (S.D.N.Y. Apr. 10, 1997)

for the proposition that "[b]y now, it is well-established that to defeat a motion for summary judgment on an Eighth Amendment claim, there must be genuine issues as to whether the corrections officers were aware that the plaintiff faced a substantial risk of serious danger.").

Evidence that "'a substantial risk of inmate attacks [which were] 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past'" is sufficient to establish the existence of a significant risk of harm. *Walters v. Gardner*, 2012 WL 1029658, at *4 (N.D.N.Y. Feb. 15, 2012) (quoting *Coronado v. Le Fevre,* 886 F. Supp. 220, 224 (N.D.N.Y.1995)).

Plaintiff claims that Defendant J. Carver, the Director of Inmate Classification and Movement for the New York State Department of Corrections and Community Supervision ("DOCCS"), and her subordinates are

> RESPONSIBLE TO ASSURE THE PROTECTION OF INMATE FROM DOCUMENTED CIRCUMSTANCES AGAINST OTHER INMATES OR SECURITY STAFF . . . [HOWEVER, HERE THEY] FAILED TO PROPERLY SCREEN OR DELIBERATELY TRANSFERRED PLAINTIFF TO UPSTATE FACILITY WHILE HAVING DIRECT KNOWLEDGE OF THE INCIDENT BETWEEN OFFICER (PREMO) AND PLAINTIFF IN (OCTOBER 26, 1999) [] FILES. MRS CARVER AND SUBORDINATE FAILED IN THEIR DUTY TO REASONABLY PROTECT THE PLAINTIFF BY TRANSFER[R]ING THE PLAINTIFF BACK TO UPSTATE CORRECTION FACILITY . . . [WHERE] A SERIOUS INMATE/OFFICER INCIDENT OCCUR[R]ED CREAT[ING] A HIGH PERCENTAGE [RISK THAT] ASSAULT AND BATTERY RETALIATION . . . [WOULD] OCCUR BETWEEN THE OFFICERS AND INMATE.

Pl.'s Opp'n at ¶ G; *see also* Compl. at pp. 9–10.

Here, the record is devoid of any evidence, direct or circumstantial, that Defendant Carver was or should have been aware that by transferring Plaintiff to UCF in April or May of 2009 he faced a specific threat of harm from Defendant Premo or any other significant risk of being harmed generally.

To begin with, it is uncontroverted[3] that in her capacity as Director of Movement and Classification, Defendant Carver was responsible for overseeing nine subordinates, and the movement and classification of 50,000 inmates amongst sixty different correctional facilities. Dkt. No. 62-6, Joyce Carver Decl., dated Aug. 1, 2013, at ¶ 2. Defendant Carver was not personaly involved "in determining where Plaintiff Clivens Celestin . . . would have been housed in the 2009 and 2010 time period. This would have been decided by one of [her] subordinates." *Id.* at ¶¶ 3–4. Moreover, nothing in the record indicates that Defendant Carver was aware of the fact that Plaintiff had stabbed Defendant Premo in October of 1999, nor that he was subsequently found guilty of the same at a disciplinary hearing. *See id.* at ¶ 5. For one thing, Defendant Carver did not become the Director of Classification and Movement until December of 2007; thus, there is no indication that she would have learned of Plaintiff's initial transfer out of UCF in 1999 or the circumstances surrounding that transfer when it occurred. *See id.* at ¶ 1.

Likewise, the record lacks any indication that Defendant Carver should have known Plaintiff would be subjected to a significant risk of harm. Critically, more than a year transpired between the time Plaintiff was transferred to UCF in April or May of 2009 and when Plaintiff was allegedly assaulted by Defendant Premo in October of 2010. Yet, there is no evidence that Plaintiff ever complained of any risk to his safety, either before being transferred back to UCF, or during the year

---

[3] Despite receiving Notice of the potential consequences of failing to properly respond to Defendants' Motion for Partial Summary Judgment, including the potential that his claims might be dismissed, Plaintiff provided only terse single sentence admissions or denials in response to Defendants' Statement of Material Fact Pursuant to Local Rule 7.1 ("7.1 Statement"). Moreover, despite having had the benefit of engaging in discovery, Plaintiff failed to submit a single document, affidavit, or declaration in support of his claims. *See* Dkt. Nos. 62-1, Notice of Consequences, & 67, Pl.'s 7.1 Statement; *see also* Pl.'s Opp'n. Defendants, on the other hand, submitted a proper 7.1 Statement supported, in pertinent part, by the sworn Declaration of Defendant Carver, and Plaintiff's Deposition. Dkt. No. 62-6, Joyce Carver Decl., dated Aug. 1, 2013; Celestin Dep. Consequently, given Plaintiff's lapse, we apply Local Rule 7.1(a)(3), and accept as true Defendants' version of the facts as established in their 7.1 Statement. *See Van Loan v. Hartford Acc. & Indem. Co*., 2006 WL 3782709, at *2–3 (N.D.N.Y. Dec. 22, 2006) (reaching a similar conclusion and citing cases to support that holding).

between being transferred and the alleged assault. Nor has Plaintiff provided any evidence that such attacks were widespread or commonplace at UCF. Plaintiff's wholly conclusory and unsupported allegations to the contrary are insufficient as a matter of law to raise a genuine issue of material fact as to the issue of whether Defendant Carver knew or should have known that transferring Plaintiff to UCF placed him at a significant risk of harm. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Moreover, to the extent that Plaintiff has alleged that Defendant Carver should be held liable because she negligently failed to screen for inmate/guard conflicts before transferring him to UCF in 2009, such a claim, even if true, does not state a cause of action under § 1983. *See Whitley v. Albers*, 475 U.S. at 319; *see also Shell v. Brun*, 585 F. Supp. 2d 465, 470 (W.D.N.Y. 2008); *cf. Abdul-Matiyn v. New York State Dep't of Corr. Servs.*, 871 F. Supp. 1542, 1547 (N.D.N.Y. 1994) (citing *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) for the proposition that "section 1983 does not provide [a] cause of action for negligent failure of prison officials to protect an inmate from injury at hands of another inmate").

Likewise, Plaintiff's conclusory and unsupported allegation that one of Defendant Carver's subordinates was responsible for the alleged constitutional deprivation is also insufficient to raise a genuine issue of material fact as to whether Defendant Carver could be found liable in her supervisory capacity. *See Bennett v. Fischer*, 2010 U.S. Dist. LEXIS 139587, at *35–36 (N.D.N.Y Aug. 17, 2010) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) for the proposition that "[i]t is well settled that vague and conclusory allegations that a supervisor has failed to properly manage a subordinate do not suffice to establish the requisite personal involvement and support a finding of liability."). Indeed, nothing in the record suggests that Defendant Carver had any reason

to suspect that one of her subordinates would violate Plaintiff's rights. *See Pettus v. Morgenthau*, 554 F.3d at 300 citing *Poe v. Leonard,* 282 F.3d 123, 140 (2d. Cir. 2002) & *Iqbal v. Hasty,* 490 F.3d 143, 166 (2d Cir.) *cert. granted sub nom. Ashcroft v. Iqbal*, 554 U.S. 902 (2008), for the proposition that "[t]o the extent that the complaint attempts to assert a failure-to-supervise claim, . . . it lacks any hint that [defendant] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."); *see also Poe v. Leonard*, 282 F.3d at 140 n.14 ("We have often equated gross negligence with recklessness, and have defined it as the 'kind of conduct[] where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'") (quoting *Bryant v. Maffucci,* 923 F.2d 979, 985 (2d Cir. 1991)).

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's failure to protect claim against Defendant Carver and she be **DISMISSED** from this action.

### E. Qualified Immunity

Defendants have also argued that Defendant Carver was entitled to qualified immunity. Defs.' Mem. of Law at p. 15. However, as we have found no evidence that Defendant Carver was personally involved in any constitutional wrongdoing, the issue of qualified immunity is moot. *See Cathedral Church of The Intercessor v. Inc. Vill. of Malverne*, 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Partial Summary Judgment (Dkt. No. 62) be **GRANTED**; and it is further

**RECOMMENDED**, that Defendants Rock, Fischer, and Carver be **DISMISSED**; and it is further

**ORDERED**, that if the above Recommendation is adopted, this case be deemed trial ready as to Plaintiff's claims against Defendants Premo, Tulip, and Traux; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: December 9, 2013
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge